IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| E. SHANE WILLIAMS, as Personal Representative of the Estate of Sheila Malcomb, deceased, )<br>)<br>)<br>)<br>Plaintiff,  )<br>)<br>vs.  )<br>)<br>REGAL HOSPITALITY )<br>SOLUTIONS, LLC, )<br>SOUTHPORT APARTMENTS, LLC, )<br>Et al.,  )<br>)<br>Defendants.  ) | CIVIL ACTION NO. 17-00108-KD-MU |

**ORDER**

Sheila Malcomb sustained injuries that eventually resulted in her death when she fell in the stairwell of a Southport Apartments unit in Gulf Shores, Alabama. (Doc. 28 at ¶ 4; Doc. 57 at 1). As a result, her conservator, who became Malcomb's Personal Representative and Administrator upon her death, sued two entities: Regal Hospitality Solutions, LLC, and Southport Apartments, LLC. (Doc. 57 at 2 & Doc. 23). Williams and Southport Apartments, LLC settled, leaving Regal as the remaining defendant. (Doc. 54 at ¶ 1).

Before the Court is Regal's Motion for Summary Judgment (Doc. 57), Williams' Response (Doc. 59), and Regal's Reply. (Doc. 61). Also before the Court is Regal's Motion to Strike (Doc. 62), Williams' Response (Doc. 65), and Regal's Reply (Doc. 66).[1] As explained *infra*, both motions are **DENIED**.

---

[1] Regal's Motion to Strike is **DENIED**. The evidence upon which the Court relied for the purpose of summary judgment could be reduced to admissible evidence at trial. Rule 56 objections are limited to evidence that "cannot be presented in a form that would be admissible in evidence." FED. R. CIV. P. 56(c)(2).

**I.     Findings of Fact[2]**

Regal Hospitality Solutions, LLC is a company in the business of "provid[ing] staffing and also turnkey services for hotels and resorts and restaurants." (Doc. 60-1 at 5). Regal also assists its employees with housing accommodations. Southport Apartments complex is an apartment complex located in Gulf Shores, Alabama. The apartments are Southport Apartments, LLC's sole asset and the reason it was formed.[3] The apartments were used primarily to house Regal employees.

In the fall of 2016, Sheila Malcomb rented a unit at the Southport Apartments complex. She signed a document entitled "Southport Rental Policies." (Doc. 60-10). On December 20, 2016, Malcomb attempted to climb the stairs in her unit. She fell while climbing the stairs in Unit 3 of the Southport Apartments complex, after the handrail failed. She sustained debilitating injuries, which resulted in a "profound and disabling brain injury." (Doc. 28 at ¶ 4). Malcomb died on April 30, 2017.

**II.     Standard of Review**

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Rule 56(c) provides as follows:

> *(1) Supporting Factual Positions.* A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> **(A)** citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or

---

[2] On summary judgment, the Court must "resolve all issues of material fact in favor of the [non-movant], and then determine the legal question of whether the [movant] is entitled to judgment as a matter of law under that version of the facts." McDowell v. Brown, 392 F.3d 1283, 1288 (11th Cir. 2004).

[3] It is undisputed that Southport Apartments, LLC holds title to the Southport Apartment Complex. (Doc. 59 at 3 (citing Doc. 60-1 at 2)).

> **(B)** showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.
>
> ***(2) Objection That a Fact Is Not Supported by Admissible Evidence.*** A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence.
>
> ***(3) Materials Not Cited.*** The court need consider only the cited materials, but it may consider other materials in the record.
>
> ***(4) Affidavits or Declarations.*** An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

FED. R. CIV. P. Rule 56(c).

Regal, as the party seeking summary judgment, bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323. "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter. Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992). Alabama law applies.

**III.     Discussion**

Williams alleges five causes of action in his first amended complaint: two negligence causes of action, two wantonness causes of action, and one "joint venture" cause of action. (Doc. 28). Regal seeks summary judgment in its favor "as to all claims" Williams alleges. (Doc. 57 at 1).

"To establish negligence, the plaintiff must prove: (1) a duty to a foreseeable plaintiff; (2) a breach of that duty; (3) proximate causation; and (4) damage or injury." Martin v. Arnold, 643 So.2d 564, 567 (Ala. 1994). Alabama law disfavors summary judgment in negligence actions. Ex parte Mobile Power & Light Co., Inc., 810 So.2d 756, 759 (Ala. 2001) (quoting Yarborough v. Springhill Memorial Hospital, 545 So.2d 32, 34 (Ala. 1989)) ("[S]ummary judgment is rarely appropriate in negligence actions, which almost always present factual issues of causation and of the standard of care that should have been exercised.").

To succeed in a wantonness claim, a plaintiff must prove "that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." Martin, 643 So.2d at 567. "Wantonness is a question of fact for the jury, unless there is a total lack of evidence from which the jury could reasonably infer wantonness." Givens v. Saxon Mortg. Servs., Inc., 2014 WL 2452891, at *16 (S.D. Ala. June 2, 2014) (quoting Cash v. Caldwell, 603 So.2d 1001, 1003 (Ala. 1992)).  "Negligence is usually characterized as an inattention, thoughtlessness, or heedlessness, a lack of due care; whereas wantonness is characterized as an act which cannot exist without a purpose or design, a conscious intentional act." Ex parte Anderson, 682 So.2d 467, 470 (Ala. 1996) (quoting McNeil v. Munson S.S. Lines, 63 So. 992 (Ala. 1913)).

4

Regal makes two arguments in its motion, both of which it asserts insulate it from liability and entitle it to summary judgment. First, Regal argues its lack of ownership of Southport Apartments means it cannot be held liable. (Doc. 57 at 6). Second, Regal argues the alleged defect was latent and unknown to anyone prior to the accident, rendering it not liable for Malcomb's injury. The second argument, however, is premised upon another determination: Malcomb's status was that of a tenant, not hotel guest.

### A. Whether a Joint Venture Exists is a Question of Fact, the Existence of Which Might Render Regal Liable, Notwithstanding Southport's Ownership.

Regal argues that because "Regal is not the owner of the premises at issue, Regal is entitled to judgment as a matter of law." (Doc. 57 at 7). In response, Williams argues Regal engaged in a joint venture with Southport Apartments, LLC to operate the apartments for Regal's benefit. As a result, he contends "Regal is jointly and severally liable for the acts of all joint venturers." (Doc. 59 at 1). Williams also argues existence of a joint venture is a jury question. The Court agrees.

> The Alabama Supreme Court defined joint venture as
>
> an association of persons with intent, by way of express or implied contract, to engage in and carry out a single business venture for joint profit, for which purpose they combine their efforts, property, money, skill, and knowledge, without creating a partnership or a corporation, pursuant to an agreement that there shall be a community of interest among them as to the purpose of the undertaking, and that each participant shall stand in the relation of principal as well as agent as to each of the other coadventurers, with an equal right of control of the means employed to carry out the common purpose of the venture.

Charles J. Arndt, Inc. v. City of Birmingham, 547 So.2d 397, 399 (Ala. 1989) (quoting 46 Am. Jur. 2d *Joint Ventures* § 1 (1969). Additionally, the Alabama Supreme Court has provided the elements of a joint venture, not all of which must be present. The elements include:

> a contribution by the parties of money, property, effort, knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a right to mutual control or management of the enterprise; expectation of profits; a

5

right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise.

Flowers v. Pope, 937 So.2d 61, 66 (Ala. 2006) (quoting Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala. 1983)). Although the elements of a joint venture are questions of law, "whether a joint venture exists has been held to be a question of fact for the jury. Unless the trial court can say that the parties were or were not engaged in a joint venture as a matter of law, the question must be presented to the jury." Flowers, 937 So.2d at 66 (quoting Charles J. Arndt, Inc., 547 So.2d at 399 (internal citations omitted)).

All members of a joint venture may be jointly and severally liable for the acts of other members. While Regal might not hold title to Southport Apartments, should Williams succeed in demonstrating the existence of a joint venture, commensurate rights and responsibilities accompanying a joint venture will follow. Indeed, in Alabama the "negligence of one participant in the joint venture or enterprise may be imputed to another participant so as to render the latter liable for an injury sustained by a third person as a result of the negligence." Underwood v. Holy Name of Jesus Hosp., 289 Ala. 216 (Ala. 1972).

In support of the proposition that only owners are liable in premises liability cases, Regal provides three cases in which the Alabama Supreme Court referenced the duty owed by an *owner*. (Doc. 57 at 7 (collecting Alabama Supreme Court cases for the proposition that the *owner* is liable in a premises liability context). Because these cases "begin and end with the *owner*" Regal says, it is not liable in any way for Malcomb's injuries. (Doc. 57 at 7 (emphasis in original)).

Not owning the premises does not shield a business from premises liability actions. Although Alabama courts frequently refer to "owners'" duties in premises liability cases, other cases refer to a defendant sued as a "possessor of land." Ex parte Howard ex rel. Taylor, 920

6

So.2d 553, 557 (Ala. 2005) (quoting Shelton v. Boston Financial, Inc., 638 So.2d 824 (Ala. 1994)) (in turn quoting RESTATEMENT (SECOND) OF TORTS § 343A (AM. LAW INST. 1965)). Yet others refer to the defendants in premises liability actions as "occupant of premises." Lamson & Sessions Bolt Co. v. McCarty, 173 So. 388, 391 (Ala. 1937).

Viewing the facts presented by Williams as to the existence of a joint venture, a reasonable factfinder could determine a joint venture existed. Specifically, Williams has presented evidence that Regal made significant contributions to the purchase of the apartments and continued to make contributions in the form of maintenance, office space and administration of the apartments. Williams has also presented evidence that Regal exercised significant control over the apartments and enjoyed the apartments' benefits.

Should Williams successfully demonstrate the existence of a joint venture, Regal may potentially be liable, notwithstanding its lack of ownership of the Southport Apartments complex. And whether Regal and Southport engaged in a joint venture in Southport Apartments is a question of fact – not law – for a jury to decide. Accordingly, Regal's motion for summary judgment is denied as to its contention that Regal cannot be liable because Regal was not the titled owner of the property.

**B. Malcomb's Status, Which Determines the Corresponding Duty She Was Owed, is a Question of Fact.**

Regal's second argument is that "[b]ecause the alleged defect in the premises was latent and was unknown to anyone prior to the accident, Regal cannot be held liable." (Doc. 57 at 5). Regal's argument, however, presupposes Malcomb's was owed a duty by a landlord to a tenant. (Doc. 57 at 5).

**1. Types of Duties Under Alabama Law.**

"Alabama law imposes three levels of duty." Shelton, 638 So.2d at 825. The utmost duty is that which is owed to invitees. Id. The minimum duty is that owed to a trespasser. And the duty between the two is that which is owed to a licensee.

A landowner owes an invitee the legal duty "to exercise reasonable care and diligence to keep the premises in a reasonably safe condition for the uses contemplated by the invitation, and to warn the invitee of known dangers, or dangers that ought to have been known, and of which the invitee was ignorant." Id. (quoting Lamson & Sessions Bolt Co., 173 So. at 389). The Alabama Supreme Court elaborated in holding:

> Additionally, *Restatement (Second) of Torts* § 343A (1965), as relied on by this Court in *Terry v. Life Ins. Co. of Georgia,* 551 So.2d 385, 386 (Ala. 1989), states: "A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness." In order for a condition to be "known," one "must be aware of the existence of the condition and must appreciate the danger it involves." *Terry,* 551 So.2d at 386. However, for a condition to be "obvious," "the condition and risk [must be] apparent to, and [of the type that] would be recognized by, a reasonable person in the position of the invitee." *Id.*

Shelton, 638 So.2d at 825.

According to at least one commentator, motel and hotel owners owe guests the same duty owed to an invitee. Ally Windsor Howell, 1 ALA. PERS. INJ. & TORTS § 4:36 (2017 ed.) ("Motel and hotel owners and operators have the same duty towards guests or patrons as any other invitor to any other invitee."). Under Alabama law,

> it is the duty of a hotel operator to keep his buildings and premises in a condition reasonably safe for the use of his guests, and where his negligence in this respect is the proximate cause of an injury to a guest he is liable therefor. This duty extends to all portions of the premises to which a guest has a right to go and to which it may reasonably be expected that he will go.

Robertson v. Travelers Inn, 613 So.2d 376, 379 (Ala. 1993) (quoting Hillman Hotel, Inc. v. McHaley, 251 Ala. 655, 657 (1948)). See also Shiv-Ram, Inc. v. McCaleb, 892 So.2d 299, 314 (Ala. 2003), as clarified on denial of reh'g (Apr. 2, 2004) (quoting Dye-Washburn Hotel Co. v.

8

Aldridge, 93 So. 512, 514 (Ala. 1922)) ("The hotel keeper must furnish safe premises for the guests, which they may use in the ordinary and reasonable way without danger; and if any guest, while using the building where she is reasonably expected to go, is injured by a defective condition of the building, the manager is liable for the injuries to his guest that are proximately caused by his negligence in the defective condition."). The duty owed invitees unquestionably represents an enhanced duty compared to the duty landlords owe tenants.

A landlord is liable "only for latent defects, known to him at the time of leasing, and which are concealed from the tenant." (Doc. 57 at 5 (quoting Chambers v. Buettner, 321 So.2d 650, 653 (Ala. 1975)).[4] See also Taylor v. Leedy & Co., 412 So.2d 763, 763 (Ala. 1982) ("The long-established policy of this state subjects the landlord to liability for latent defects of which he knows at the time the lease is made and which he conceals from the tenant."). Landlords have no duty to inspect for latent defects. Stallings v. Angelica Unif. Co., 388 So.2d 942, 945 (Ala. 1980).

### 2. Malcomb's Status is Contested.

Malcomb's status in Southport Apartments determines what level of duty she was owed. See, e.g., Christian v. Kenneth Chandler Const. Co., 658 So.2d 408, 410 (Ala. 1995) ("[T]he duty owed by the landowner to a person injured on his premises because of a condition on the land is dependent upon the status of the injured party in relation to the land.") and Quillen v. Quillen, 388 So.2d 985, 988 (Ala. 1980) ("[T]he extent of [a] duty is necessarily dependent upon the plaintiff's 'status' on the defendant's property."). On this front, the parties disagree. Regal argues Malcomb was a tenant, but Williams argues she was a hotel guest.

---

[4] See also Sanders v. Vincent, 367 So.2d 943, 944 (Ala. 1978) (internal brackets and ellipsis omitted) (quoting Southern Apartments, Inc. v. Emmett, 114 So.2d 453 (Ala. 1959)) ("As to the tenant, his servant, guest or others entering under his title, in the absence of a covenant to repair, the landlord is only liable for injuries resulting from latent defects, known to him at the time of the leasing, and which he concealed from the tenant.").

"As a general rule, the question whether a plaintiff is a licensee or is an invitee is factual, and should therefore be resolved by the trier of fact." Edwards v. Intergraph Servs. Co., 4 So.3d 495, 502 (Ala. Civ. App. 2008) (quoting Walker v. Mitchell, 715 So.2d 791, 793 (Ala. Civ. App. 1997). See also Winn-Dixie Montgomery, Inc. v. Rowell, 288 So.2d 785, 789 (Civ. App. 1973), writ denied sub nom. In re Winn Dixie Montgomery, Inc. v. Rowell, 288 So.2d 792 (Ala. 1974) ("The question of whether a person is or is not an invitee is factual and in a jury trial devolves upon the jury for determination.").

"An invitee is a visitor, a transient who enters property at the express or implied invitation of the owner or occupier for the material or commercial benefit of the occupier." Osborn v. Brown, 361 So.2d 82, 87 (Ala. 1978).  See also Davidson v. Highlands United Methodist Church, 673 So.2d 765, 767 (Ala. Civ. App. 1995) ("One who enters the land of another, with the landowner's consent, to bestow some material or commercial benefit upon the landowner is deemed an invitee of the landowner.").  "A tenant, on the other hand, does not merely visit, but acquires an interest in the property, including the exclusive legal possession of the leased premises." Osborn, 361 So.2d at 87.  "A tenant has additional, more substantial connections with the land and the landowner[,]" such as the right to exclusive possession. Kitchens By & Through Kitchens v. United States, 604 F.Supp. 531, 534-35 (M.D. Ala. 1985). See also Rehfuss v. McAndrew, 33 So.2d 16, 18 (Ala. 1947) ("The difference between a tenant and lodger seems to hinge on whether an occupant has the exclusive possession or merely the use without the actual or exclusive possession.").

The question of whether someone is a hotel guest or tenant is not always simple.[5] Alabama courts have relied upon a variety of factors to determine whether a person should be

---

[5] Beale v. Posey, 72 Ala. 323, 331–32 (Ala. 1882) ("There may be, sometimes, much of difficulty in determining whether the relationship of guest exists.").

10

considered a tenant. Kitchens By & Through Kitchens v. United States, 604 F.Supp. 531, 535 (M.D. Ala. 1985) (collecting cases in which Alabama courts have found a landlord-tenant relationship existed absent explicit agreement, such as payment and receipt of rent, right to exclusive possession, and payment of insurance and taxes in exchange for living on the premises). In Kitchens, a child brought suit for injuries sustained at Maxwell Airforce Base in Montgomery, Alabama. Kitchens By & Through Kitchens, 604 F.Supp. at 533. The child and his parents resided in noncommissioned officers housing on the base. Id. The child's parents signed an Air Force policy agreement that governed their occupancy, forewent a housing allowance in exchange for living on the base, obtained exclusive legal possession of the apartment, and agreed to provide a thirty-day notice before vacating the property. Id. at 534-35. Notably, they did not execute "an explicit agreement, as most typically in a lease." Id. at 535. The child fell while playing in the backyard in an open space, over which the Air Force retained control. Id. at 536. Judge Thompson held that the child was due the protection of a tenant, relying on factors Alabama courts have held indicate a landlord-tenant relationship. Id. Alabama courts routinely conclude an occupant is a tenant, for the purpose of premises liability, despite the occupant not signing a conventional lease; however, circumstances are rare – if not nonexistent – in which an Alabama court found an occupant was a tenant, despite the contract explicitly stating "this is not a lease."

The rental agreement Malcomb signed contained the following: "I understand that this is not a lease. I agree that this is a weekly hotel rental." (Doc. 60-10 at 4). The circumstances surrounding Malcomb's occupancy in Southport Apartment require this court assess a unique question: for the purposes of premises liability, can a person be deemed a tenant notwithstanding the contract she signed explicitly stated the relationship was one of hotel owner-guest?

11

Regal cites to Ervin v. Stackhouse for the proposition that a document's substance rather than its form should prevail. In Ervin, the court held a week-to-week lease agreement was subject to the Uniform Residential Landlord Tenant Act, despite its short-term duration. (See Doc. 61 at 2 (citing Ervin v. Stackhouse, 64 So.3d 666, 667 (Ala. Civ. App. 2010)). Ervin proves inapplicable.[6] Neither the occupant nor the owner in Ervin denied their agreement constituted a lease. Instead Ervin concerned whether the lease was a "transient occupancy" or non-transient lease as outlined in § 35-9A-122(4), Ala. Code 1975.[7] Here, the parties differ as to whether Malcomb was a tenant.

Regal also urges the Court to accept what it suggest are the symbols, characteristics, and circumstances of Malcomb's occupancy: Malcomb was not a mere guest, but actually lived in the Southport Apartments, Regal argues. She and her family resided there, and had done so for at least two months (though not in the same unit), judging from the October 5 date of the contract. (Doc. 60-10 at 1). Malcomb and her family did not regularly move in an out like one expects a transient hotel guest to do (although they did change apartments on at least one occasion). Regal also suggests other indicia of a landlord-tenant relationship was present in the contract (i.e., Malcomb referred to as "renter", transaction referred to as "rental payments", etc.). (Doc. 61 at 3).

Williams urges the Court to credit the applicable rental agreement, which he maintains "plainly and unambiguously disavows a landlord-tenant relationship . . . and defines the relationship as a weekly hotel rental." (Doc. 59 at 21).[8] The agreement to which Regal bound

---

[6] Regal neglected to include another key holding from the Ervin case: "Courts generally enforce contracts as written." Ervin, 64 So.3d at 671.
[7] Ala. Code § 35-9A-122 ("Unless created to avoid the application of this chapter, the following arrangements are not governed by this chapter: (4) transient occupancy in a hotel, motel, or lodgings.")
[8] The rental agreement supplied by Williams pertains to October 5 – October 11, 2016. A rental agreement for the period during which Malcomb fell has not been provided to the court.

Malcomb clearly disavowed a lease. It explicitly stated that the agreement was "a weekly hotel rental." (Doc. 60-10 at 4). It also discussed "check in" policies, referenced "guest" (not tenants), subjected Malcomb to a lodging tax (doc. 60-10 at 3), prohibited inhabitants from moving any furniture, and provided check-in and check-out times similar to a hotel. (Doc. 60-10 at 2). The agreement also said that "representatives of management or owners may enter the premises at any reasonable time . . . ." (Doc. 60-10 at 4).

As the Alabama Supreme Court has held, "*[t]he* difference between a tenant and lodger seems to hinge on whether an occupant has the exclusive possession or merely the use without the actual or exclusive possession."[9] Rehfuss, 33 So.2d at 18 (emphasis added). This possession includes exclusive legal possession. Osborn, 361 So.2d at 87. See also Tenant, Lodger, and Guest: Questionable Categories for Modern Rental Occupants, 64 YALE L.J. 391, 392–93 (1955) ("For the relation of landlord and tenant to exist, there must be a grant of the exclusive possession of property for a specified term. Such a grant is considered a lease and gives the tenant an 'interest in land.'"). To explicitly deny an occupant a lease such as Malcomb's agreement did, would appear to deny Malcomb a *sine qua non* of tenancy: exclusive legal possession. Stated differently, an agreement that categorically disavows a lease would seemingly deny an occupant such exclusive possession.

---

[9] In this respect, Alabama law mirrors the rule laid out in a California Supreme Court case cited by the Alabama Supreme Court in Osborn, 361 So.2d 82. The California Supreme Court held
> [t]he chief distinction between a tenant and a lodger lies in the character of possession. A 'tenant' has exclusive legal possession of premises and is responsible for their care and condition. A 'lodger' has only the right to use the premises, subject to the landlord's retention of control and right of access to them. To make one a tenant, as respects an owner's liability for injuries sustained by occupant on the premises, he must have exclusive possession and control.

Stowe v. Fritzie Hotels, 282 P.2d 890, 893 (Cal. 1955).

There are genuine issues of material fact as to whether Malcomb was a tenant or invitee at Southport Apartments. Accordingly, Regal's motion for summary, based on a lack of landlord liability for an unknown latent defect, is due to be denied.[10]

## IV.    Conclusion

Because genuine issues of material fact exist regarding 1) whether Regal was a joint venturer with Southport Apartments, LLC and, if so, 2) whether Regal's duty was as a landlord, Regal's motion for summary judgment is **DENIED**. (Doc. 57). Regal's Motion to Strike is also **DENIED**. (Doc. 62).

Done the 16th day of March 2018.

<u>**/s/ Kristi K. DuBose**</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**

---

[10] Regal's argument that it breached no duty to Malcomb rests upon a determination that Malcomb was a tenant. Regal did not address whether it breached a duty under the heightened standard owed to a hotel guest or invitee.